## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

CHRISTIE MCBRIDE and ANITA LEDESMA,
JASMINE DOUGLAS,
and EMILY HOOVER, individually                    Case No. 1:23-cv-00540
and on behalf of similarly situated persons,
                                                  Hon. Hala Y. Jarbou
          Plaintiffs,

v.

Y & W CORP., d/b/a The Tangy Crab, OHANA
SUSHI CORP. d/b/a Ohana Sushi, Z & W
RESTAURANTS, INC., d/b/a Tangy Crab of
Flint, and JOHN DOES 1-10,

          Defendants

_____

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF OPT-IN SETTLEMENT AND FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF SERVICE AWARDS

Plaintiffs, through their undersigned counsel, respectfully moves this Court for an Order:

1.      Accepting the First Amended Complaint, as filed by consent of the parties for purposes of settlement approval.

2.      Granting approval of the Parties' Collective FLSA Settlement Agreement and a Gross Settlement Amount of $500,000 as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act ("FLSA").

3.      Certifying the proposed collective for settlement purposes only, for the reasons stated in Plaintiffs' Motion for Court Supervised Notice. (ECF No. 19).

4.      Approving Plaintiffs' unopposed request for payment from the settlement fund for attorneys' fees in the amount of one-third of the fund ($166,666.66);

5.      Approving Plaintiffs' unopposed request for payment from the settlement fund for counsel's litigation costs, currently estimated at $5,000, but not to exceed $7,500.00 (inclusive of

administration costs);

6.      Approving Plaintiffs' unopposed request for payment from the settlement fund for a service award to the Named Plaintiffs in the amount of $5,000.00 each, for a total amount of $20,000;

7.      Approving the plan of distribution and directing that the settlement funds be distributed in accordance with the terms of the settlement;

8.      Dismissing this action with prejudice and entering final judgment; and

9.      Reserving exclusive and continuing jurisdiction over this action for purposes of supervising the implementation and enforcement of the Settlement Agreement and this Order.

This Motion is based on the accompanying Memorandum of Law, the Declaration of David M. Blanchard, and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the Settlement Agreement, Defendants do not oppose this Motion.

A proposed Order is submitted for the Court's consideration.

<div style="margin-left:50%">

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ David M. Blanchard
David M. Blanchard (P67190)
Kelly R. McClintock (P83198)
Attorneys for Plaintiffs and Class
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
mcclintock@bwlawonline.com

</div>

Dated:  April 14, 2024

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

CHRISTIE MCBRIDE and ANITA LEDESMA,
JASMINE DOUGLAS,
and EMILY HOOVER, individually                    Case No. 1:23-cv-00540
and on behalf of similarly situated persons,
                                                   Hon. Hala Y. Jarbou
         Plaintiffs,

v.

Y & W CORP., d/b/a The Tangy Crab, OHANA
SUSHI CORP. d/b/a Ohana Sushi, Z & W
RESTAURANTS, INC., d/b/a Tangy Crab of
Flint, and JOHN DOES 1-10,

         Defendants

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## UNOPPOSED MOTION FOR FINAL APPROVAL OF OPT-IN SETTLEMENT AND
## FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF SERVICE AWARDS

# TABLE OF CONTENTS

ISSUES PRESENTED ................................................................................................. IV

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................ V

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................ 2

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ............................... 2

   A.   THE SETTLING OPT-IN PLAINTIFFS ...................................................... 2

   B.   THE SETTLEMENT AMOUNT .................................................................. 3

   C.   CALCULATION AND DISTRIBUTION OF THE NET SETTLEMENT AMOUNT ...... 3

   D.   RELEASE OF CLAIMS ............................................................................. 4

   E.   DATA REGARDING THE SETTLEMENT AMOUNT ................................. 4

IV.     DISCUSSION .................................................................................................... 5

   A.   LEGAL STANDARD ................................................................................. 5

        1.  The Settlement Agreement Is a Compromise of a Bona Fide Dispute ...... 6

        2.  The Settlement Amount is Fair and Reasonable ............................... 7

        3.  Anticipated Burdens and Expenses of Litigation ............................. 8

        4.  Seriousness of the Litigation Risks ................................................... 8

        5.  Arm's-Length Bargaining Between Experienced Counsel .............. 9

        6.  Possibility of Fraud or Collusion ..................................................... 9

   B.   THE COURT SHOULD APPROVE PLAINTIFFS' REQUEST FOR FEES AND COSTS ...... 10

        1.  The Requested Fee Award Is Reasonable ........................................ 10

            a.  The Value of the Settlement ........................................................ 11

            b.  Society's Stake in Rewarding Attorneys Who Produce the Benefits to the Class in Order to Maintain an Incentive for Others ........................................ 11

**c.**    ***Counsel's Risk in Litigating This Case on a Contingency-Fee Basis*** ................... 12

**d.**    ***Lodestar Crosscheck*** ........................................................................... 13

**e.**    ***The Complexity of the Litigation*** ............................................................ 15

**f.**    ***Counsel's Skill*** ................................................................................... 15

**2.**    ***The Court Should Approve Payment for Plaintiffs' Litigation Costs*** ........................ *15*

**C.**    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS ............................. 16

**IV.**    **CONCLUSION** ................................................................................................ **17**

## ISSUES PRESENTED

I.    Whether the proposed Settlement Agreement is fair and reasonable and should be approved.

Plaintiffs' Answer:    Yes

Defendants' Answer:  Yes

II.   Whether Plaintiffs' requested attorneys' fees, litigation costs, Named Plaintiffs service awards, and third-party settlement administrator costs should be approved.

Plaintiffs' Answer:            Yes

Defendants'    Answer:        Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350 (11th Cir. 1982)

*Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 U.S. Dist. LEXIS 71825 (E.D. Mich. May 11, 2017)

*Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D. Ohio May 4, 2018)

*Fegley v. Higgins*, 19 F.2d 1126 (6th Cir. 1994)

## I.     INTRODUCTION

Plaintiffs move for approval of the Parties' Final Settlement Agreement and Release (the "Settlement" or "Agreement") (Ex. 1), which provides for a Gross settlement amount of $500,000.00, with net proceeds to be distributed to collective members who opt-in to the case by cashing a check, which will be issued and sent to the entire collective by Defendants, in exchange for a release of wage and hour claims. As discussed further herein, because the Settlement provides for a streamlined process by allowing potential collective members to participate in the settlement by simply cashing a check, this Court need only apply a one-step approval process; a notice period is not required.

As also discussed further herein and in the Declaration by Plaintiffs' counsel submitted concurrently herewith. (Ex. 2, Declaration of David Blanchard ("Blanchard Decl.")), the Settlement is a fair and reasonable resolution of a *bona fide* dispute. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (1) approving the Settlement as fair and reasonable; (2) approving payment from the settlement fund for Plaintiffs' counsel's  fees in the amount of one-third of the Gross Settlement Amount; (3) approving payment from the settlement fund for Plaintiffs' out-of-pocket litigation expenses in the estimated amount of $5,000 but guaranteed not to exceed $7,500.00 (3) approving a service awards from the settlement fund to Named Plaintiffs Christie McBride, Anita Ledesma, Jasmine Douglas, and Emily Hoover in the amount of $5,000.00 to each; (4) approving payment from the settlement fund for the third-party settlement administrator not to exceed $7,500.00; (5) dismissing this case with prejudice; and (6) reserving exclusive and continuing jurisdiction over this action for purposes of supervising the implementation and enforcement of the Settlement and Approval Order.

## II.     FACTUAL BACKGROUND

Plaintiff McBride worked as a server for Defendants Tangy Crab and Ohana Sushi from approximately May 2021 until April 2022. (Ex. 3, Declaration of Christie McBride ("McBride Declaration")). Plaintiff McBride has alleged that she and other servers and bartenders employed by Defendants were not paid a minimum wage under state and federal law. (*See generally* ECF No. 1 and Ex. 4). Instead, Defendants paid subminimum wage utilizing a "tip-credit system"—a system for which Plaintiffs' allege they did not qualify, in part (Plaintiffs alleged) because Defendants unlawfully redirected tips to benefit management and pay non-customarily tipped employees. *Id.*

Defendants contended that Plaintiffs were paid a minimum wage when including the "credit" for tips. (ECF No. 10, PageID.45). Defendants have further contended that they were, in fact, eligible to take a tip credit under the FLSA, and deny that they re-directed tips to management and non-customarily tipped employees. *Id.*

Plaintiffs moved for conditional certification of the proposed FLSA collective and issuance of notice thereto, which the Court has not issued a decision on yet. (ECF No. 19) (Ex. 27, proposed notice of settlement).  In the meantime, the parties were able to attend several productive mediation sessions with experienced mediator, Stephen R. Drew, and partake in further negotiations thereafter. This Settlement will resolve potential claims for the approximately 82 members of the proposed collective, including the Named Plaintiffs and those who have already opted in. (Ex. 2, ¶ 13).

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     THE SETTLING OPT-IN PLAINTIFFS

The Settlement provides that checks will be issued to the entire proposed collective. Each potential collective member will have the option of opting in simply by cashing their check.  Each

check from the net settlement fund is calculated pro-rata, based on detailed payroll information submitted by Defendants. By cashing the settlement checks issued by Defendants, each plaintiff will be deemed as having opted-in to the lawsuit and released their claims. The claims of those who do not cash the checks are unaffected, so there is no impact to absent collective members or those who choose not to opt-in. (Ex. 1, ¶ 3.1).

### B.    THE SETTLEMENT AMOUNT

The Settlement provides for a Gross Settlement payment of $500,000.00. From this amount, and subject to Court approval, $166,666.66 will be paid to counsel for their attorneys' fees, up to $7,500.00 will be paid to counsel as reimbursement for litigation-related expenses (from which Plaintiffs' counsel will pay a third-party Settlement Administrator), and $5,000.00 will be paid to each named Plaintiff as a service award (for a total of $20,000 in service awards). (Ex. 1, ¶¶ 1.19, 2.4, 2.13, 2.14). Thus, the Net Settlement Amount is expected to be $308,333.34 or more and will fairly compensate each collective member based on hours worked and pay records. *Id.*[1]

### C.    CALCULATION AND DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

From the net settlement amount, the funds shall be apportioned on a pro-rata basis among the FLSA Collective Members, as reflected on Exhibit 1, according to a formula that shall account for the estimated number of hours and alleged unpaid minimum wage worked by each member during the Claim Period. (Ex. 1, ¶ 2.5). Payment is due within 30 days of the Court's approval of the Agreement becoming final and non-appealable or on or before May 15, 2024, whichever is later. (Ex. 1, ¶ 2.4). Settlement checks will be negotiable for one-hundred eighty (180) days from the date of issuance. (Ex. 1, ¶ 2.10). Any proceeds from checks that are uncashed at the end of the

---

[1] If the cap on litigation expenses and third-party administrator expenses are not met, any leftover funds will be distributed to the opt-ins.

180-day period revert to Defendants, less any employer taxes and outstanding costs. Defendants shall be responsible for the employer's share of Employer Taxes on the W-2 to be funded out of any amounts of uncashed checks. Notwithstanding the above, Defendants shall have 5 days after receipt of the Administrator's reimbursement bill to dispute the amount of Employer Taxes stated therein, and no reimbursement shall be required until the amount of the Employer Taxes is resolved. *Id.*

### D.    RELEASE OF CLAIMS

In exchange for payment, opt-ins will provide a release of claims that is appropriately limited to alleged violations of federal and state wage and hour laws, other compensation related claims which could have been asserted in the lawsuit, and related record-keeping and income reporting violations. (Ex. 1, ¶ 3.1).

### E.    DATA REGARDING THE SETTLEMENT AMOUNT

To allow the Parties to make informed decisions about resolution at the Parties' mediation sessions, Plaintiffs' counsel requested, and Defendants produced wage information data from the relevant time period for the employees working at the Tangy Crab Lansing location only (there are two other restaurants, Ohana Sushi and Tangy Crab Flint). The number of months each employee worked was provided for all three locations. The Tangy Crab Lansing data included: (1) hours worked; and (2) wages paid. Using this data, counsel calculated the difference in the applicable minimum wage and the actual wages paid to determine the damages differential applicable to each Plaintiff working at Tangy Crab Lansing. Based on the actual damages for the Tangy Crab Lansing, counsel calculated the average wage loss per month and then calculated damages for the servers and bartenders at the other two locations based on how many months each employee worked. The average wage loss per month, per employee was $436.77. (Ex. 2, ¶ 24). Thus, Plaintiffs' counsel valued opt-ins' wage loss at approximately $343,392.68, based on the

highest *state minimum wage*. When compared against the possibility of recovering only the $7.25 federal minimum wage provided by the FLSA, that wage loss is cut in half–to approximately $170,000.00.

Every case involves risk to all parties. Should litigation continue, there is a risk Plaintiffs' Motion for Notice might be denied, that Plaintiffs' case is dismissed, that a jury returns a no cause, that pendant state claims are dismissed, or that damages are awarded at a lower level than Plaintiffs would desire. Even after all fees and costs, The Net Settlement available for distribution compensates collective members at the top of the range of potential recovery, at an impressive 180% percent of estimated wage loss for all opt-ins to collect unpaid wages owed to them under the FLSA. *Id.*  And still impressive 90% of all wage loss calculated according to state minimum wage.

## IV.    DISCUSSION

### A.    LEGAL STANDARD

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA's pay requirements are mandatory and, except in two narrow circumstances, employees' rights under the FLSA are generally not subject to waiver by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). One such circumstance, as here, is when a court reviews and approves a settlement in a private action for back wages. *Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350, 1353 (11th Cir. 1982).

In approving an FLSA settlement, the court must ensure that there is a fair and reasonable resolution of a *bona fide* dispute. *Id.* at 1354–55; *see also Brown v. AK Lawncare, Inc.*, No. 14-

14158, 2017 U.S. Dist. LEXIS 71825, at *3 (E.D. Mich. May 11, 2017) (Ex. 5) (citing *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 U.S. Dist. LEXIS 9310, at *3 (E.D. Mich. Jan. 27, 2016) (Ex. 6)). In doing so, the court considers several factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.

*Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted)).

### 1.  *The Settlement Agreement Is a Compromise of a Bona Fide Dispute*

The Settlement reflects a compromise of a *bona fide* dispute. In the context of an FLSA case, a *bona fide* dispute exists where "both parties face risks if the Court determines the appropriate calculation of overtime pay." *Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 U.S. Dist. LEXIS 13530, at *6 (E.D. Mich. Feb. 1, 2017) (Ex. 7).

Here, the Parties disputed whether opt-ins received the state and federal minimum wage and whether Defendants were eligible to receive a tip credit under the FLSA. After evaluating the evidence and performing their own investigation of the claims, Plaintiffs concluded that there remained significant risks with respect to liability, damages and notice for collective certification. For example, there would be material disputes regarding: (1) whether Defendants were in fact entitled to receiving a tip credit based on tip pooling practices; (2) whether those practices apply with substantial uniformity across opt-ins; and (3) whether the Defendants' restaurants shared common ownership. Opt-ins also faced a risk that: (4) Defendants would be able to show that, even if unlawful, its practices were reasonable and in good faith; and (5) that opt-ins would be unable to prove a "willful" violation of the FLSA, which would result in a two-year, rather than

three-year, relevant time period, thereby reducing the size of the collective (and, therefore, reducing the size of potential damages).

Although Plaintiffs believe in the merits of their claims, given the time, expenses, and risks associated with continued litigation, the Parties reached a settlement that fairly reflects the risks to both sides in this *bona fide* dispute.

### 2.  *The Settlement Amount is Fair and Reasonable*

At the core of *Lynn's Food* is the concept that FLSA settlements must "reflect a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. In determining whether a settlement amount is reasonable, "there is a range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The Settlement in this matter represents a reasonable compromise, given the disputed facts and legal complexities of the case. Plaintiffs' counsel performed calculations of the possible damages for the opt-ins. (Ex. 2, ¶ 22). The Net Settlement Amount of $308,333.34 represents 180% of Plaintiffs estimated FLSA damages based on Defendants' assertions. Of course, no recovery was a possibility that Plaintiff had to consider as well. *Compare Brown*, 2017 U.S. Dist. LEXIS 71825, at *7-8 (Ex. 5) (finding that an FLSA recovery representing approximately 60% of the total amount of damages the plaintiffs could have recovered at trial was fair and reasonable); *Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *11 (E.D. Mich. June 27, 2006) (Ex. 8) (finding settlement representing between 18 and 46 percent of the Plaintiffs' claimed damages as being fair and reasonable). The recovery here therefore adequately reflects both the

litigation risks and the benefit of receiving a certain settlement amount now without protracted litigation.

### 3. *Anticipated Burdens and Expenses of Litigation*

The Settlement represents an excellent value considering the burdens and expenses of continued litigation. For example, the likely next step in the case would be voluminous, expensive, and time-consuming written discovery and a significant number of depositions of Plaintiffs, opt-ins, and Defendants' managerial employees. Plaintiffs would expend a significant amount of time and resources issuing notice to the proposed collective and filing opt-ins. While not planned for, discovery-related motions would have been likely. Moreover, the Parties would have litigated collective action treatment in Defendants' eventual opposition to class certification, and would have litigated dispositive motions on liability, liquidated damages, and willfulness. An eventual trial would, of course, be a tremendous expense for the Parties.

### 4. *Seriousness of the Litigation Risks*

The Parties vigorously dispute liability, damages, and collective treatment. Defendants have contended that their practices are fully compliant with the FLSA, including the tip-pooling policy. And while Plaintiffs are confident the Court will grant Notice and eventual Class Certification, there was no guarantee that the Court would maintain the collective. Plaintiffs also had to take into consideration Defendants' ability to show good faith and reasonableness as a defense to liquidated damages, and Plaintiffs' ability to maintain a three-year relevant time period by proving that Defendants' violations of the FLSA, if any, were willful. Indeed, had Plaintiffs been unable to making a showing of willfulness, many opt-ins who will benefit from this settlement would have been precluded from participating in the case. Additionally, while the Parties would seek to litigate the case efficiently, delay is inherent in litigation, and any theoretical recovery at

the end of the case would likely take years, after resolution of appeals. Accordingly, this factor supports approval. *See Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) (finding that settlement provided an immediate value to the class and minimized the costs that plaintiffs would incur in moving forward).

### 5.  *Arm's-Length Bargaining Between Experienced Counsel*

The parties were able to reach this resolution only after engaging in litigation on Plaintiffs' Motion for Judicial Notice, an exchange of information for mediation purposes, and two arm's-length mediations with a qualified mediator. As described above, Plaintiffs' counsel thoroughly investigated the applicable law and Defendants' records to determine that this Settlement represents good value for opt-ins.

Plaintiffs' counsel has extensive experience in class action wage and hour litigation. Blanchard & Walker, PLLC was founded by David M. Blanchard and Angela L. Walker. (Ex. 2, ¶¶ 2-8). David M. Blanchard has specialized in representing employees in complex litigation matters since 2004 and has served as lead counsel or co-counsel in dozens of wage and hour class action cases and collective action cases across the nation. *Id.*

### 6.  *Possibility of Fraud or Collusion*

This settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have class action wage and hour litigation experience and detailed knowledge of the legal and factual issues of this case. (Ex. 2, ¶ 35). Resolution only became realistic after motion practice and two mediations, and the Parties engaged an experienced, neutral mediator to mediate and facilitate continued discussions between the Parties to reach this Agreement. *See Bert v. AK Steel Corp.*, No. 02-CV-647 SSB, 2008 U.S. Dist. LEXIS 111711, at *6-7 (S.D. Ohio Oct. 23, 2008) (Ex. 9) (stating that "[t]he participation of an independent mediator in settlement

negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties."). This factor and all other factors therefore support approval of the settlement.

**B.    THE COURT SHOULD APPROVE PLAINTIFFS' REQUEST FOR FEES AND COSTS**

The FLSA permits plaintiffs to recover their attorneys' fees and costs under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b). The amount of a fee award is within the discretion of the district judge. *Fegley v. Higgins*, 19 F.2d 1126, 1134 (6th Cir. 1994). Where a settlement includes payment of attorneys' fees, the court must assess the reasonableness of fees and costs. *Belmont v. Homes of Opportunity, Inc.*, No. 18-10854, 2018 U.S. Dist. LEXIS 209920, at *2-3 (E.D. Mich. Dec. 13, 2018) (Ex. 10) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

**1.    *The Requested Fee Award Is Reasonable***

The percentage-of-the-fund method is regularly utilized and approved as the formula by which to calculate attorneys' fees. *See Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. Mar. 25, 1993); *see also Swigart*, 2014 U.S. Dist. LEXIS 94450, at *15 (Ex. 11) (finding that the percentage-of-the-fund was "the most appropriate method for determining reasonable attorneys' fees" in a wage and hour case). In collective or class actions, Courts routinely approve fees amounting to one-third of the settlement fund, as Plaintiffs request here. *See, e.g.*, *Farkas v. Boschert*, No. 17-cv-12536, 2018 U.S. Dist. LEXIS 105263, at *6-7 (E.D. Mich. June 25, 2018) (Ex. 12) (approving one-third of the total settlement amount in attorneys' fees); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *13 (Ex. 13) (same); *Brown*, 2017 U.S. Dist. LEXIS 71825, at *9-10 (Ex. 4) (approving fees amounting to 40% of the net recovery); *Smolinski v. Ruben & Michelle Enters. Inc.*, No. 16-cv-13612, 2017 U.S. Dist. LEXIS 64088, at *7-8 (E.D. Mich. Apr. 27, 2017) (Ex. 14) (approving fees amounting to one-third of the settlement fund); *see also Wise*, 835 F. Supp. at 980

("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created.").

In considering the reasonableness of the requested fee award, the Sixth Circuit looks to the following six "*Ramey*" factors:

(1)    The value of the benefits rendered to the class;
(2)    Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
(3)    Whether the services were undertaken on a contingent fee basis;
(4)    The value of the services on an hourly basis (the lodestar cross-check);
(5)    The complexity of the litigation;
(6)    The professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

### a.  *The Value of the Settlement*

Counsel's work in this case resulted in a settlement that provides excellent value to opt-ins given the strengths and weaknesses of the case. Indeed, the Gross Settlement Amount represents *three times* of the potential FLSA damages. Of course, there is also significant value in providing immediate relief instead of waiting years for an uncertain income. There is further material value in eliminating the significant additional legal risks and discovery-related burdens to opt-ins if the litigation were to continue. Accordingly, the value of the benefits to the FLSA Collective weighs in favor of the requested fees.

### b.  *Society's Stake in Rewarding Attorneys Who Produce the Benefits to the Class in Order to Maintain an Incentive for Others*

Society's stake in rewarding attorneys who bring collective action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) (Ex. 15) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

As with almost all service industry workers, without this lawsuit and settlement, many—if not all—of the opt-ins would not have had the resources to pursue their claims or even known they had potential claims against Defendants. The requested fee is an incentive for Plaintiffs' attorneys to continue their hard work on behalf of low-wage workers who may be owed money by their employers. (*See* Ex. 2, ¶¶ 9-12). Moreover, fee awards in cases that do resolve are incredibly important, because for every case in which there is a reasonable settlement, there are other cases that fail—for example, when there are arbitration provisions that prevent workers from forming a class, or countless other pitfalls. *Id.* Without reasonable fee awards in cases like this, there would simply be too much risk with too little reward for many Plaintiffs' attorneys to maintain their practices and enforce the law for low-wage workers. Accordingly, this fact supports granting the fee request. *Id.*

### c.   *Counsel's Risk in Litigating This Case on a Contingency-Fee Basis*

Despite the many risks associated with prosecuting this case, including issues related to certification, liability, and damages, Plaintiffs' counsel took this case solely on a contingency-fee basis, advanced significant out-of-pocket expenses, and were prepared to make this investment despite the uncertainty of a successful outcome. (Ex. 2, ¶¶ 30, 34-46).

Plaintiffs' Counsel actively and efficiently litigated this case by performing tasks integral to the successful resolution of this matter, including: (1) investigating the potential claims; (2) drafting the Complaint and Amended Complaint; (3) interviewing putative and actual members of the collective regarding their claims; (4) preparing and serving Initial Disclosures and Witness Lists; (5) promptly briefing Plaintiffs' Motion for Judicial Notice; (7) performing detailed damage calculations and analyzing payroll data; (8) engaging in prolonged mediation discussions and extensive meet and confers regarding data between afterward; (9) drafting, editing, and filing the

Settlement Agreement and settlement approval papers; (10) working with the administrator to send notice to putative FLSA Collective Members; and (11) performing detailed damage calculations. (Ex. 2, ¶ 37). Further, Plaintiffs' Counsel will continue to represent Plaintiffs and opt-ins through the next several months to answer questions about the settlement, verify contact information, and ensure proper distribution of settlement checks. *Id.* This factor thus weighs in favor of awarding the requested fees.

### d.  *Lodestar Crosscheck*

Although courts utilize a percentage-of-the fund calculation for attorneys' fees in wage and hour cases like this one, courts also have the discretion to employ a "lodestar crosscheck" to confirm the reasonableness of an award. Counsel's declarations state a summary of the relevant hourly rates and time spent on the case.  (Ex. 2, ¶¶ 34-37). These hours were efficient and non-duplicative, and all were reasonable and necessary in reaching this Settlement. *Id.* Moreover, under the Settlement, Plaintiffs' Counsel will continue to handle most aspects of administration, saving significant administration costs for the collective members. All told, Plaintiffs anticipated lodestar (projected through settlement administration) is $103,685.00, and the requested fee represents a multiplier of only 1.6 on counsel's lodestar. (Ex. 2, ¶ 39). *Compare Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *19-22 (S.D. Ohio Nov. 5, 2020) (Ex. 16) (finding that, although a lodestar cross-check was "not required," the multiplier of 5.29 before accounting for additional work was appropriate given the extensive wage and hour experience of the plaintiff's counsel); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17-19 (citing cases approving multipliers ranging from 4.3 to 8.74) (Ex. 17).[2]

---

[2] Courts routinely apply a multiplier to the lodestar in class action settlements. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *37-38 (S.D.N.Y. Sept. 16, 2011) (noting that "[c]ourts routinely award counsel two to three times lodestar in class action

Counsel's hourly rates are also reasonable considering the complexity of collective action litigation, counsel's extensive experience, and the excellent recovery for opt-ins. Each attorney's and staff member's rates are supported by the market and consistent with other rates in the Sixth Circuit and nationally. *See, e.g.*, *Whitfield v. Trinity Rest. Grp., LLC*, No. 18-10973, 2019 U.S. Dist. LEXIS 182055, at *12 (E.D. Mich. Oct. 3, 2019) (finding $658 hourly rate for attorney with 9 years of experience in employment class and collective actions was reasonable) (Ex. 19); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *17 (S.D. Ohio Oct. 3, 2018) (concluding that $675 for a senior attorney and between $250 and $400 for additional attorneys were reasonable) (Ex. 20); *Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 U.S. Dist. LEXIS 73598, at *15 (S.D. Ohio Apr. 19, 2022) (finding hourly rates from $550-$600 for partner-level attorneys reasonable) (Ex. 21); *Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 U.S. Dist. LEXIS 117220, at *29 (W.D. Tenn. July 2, 2020) ("Class Counsel's hourly rates range from $325 to $600. [] The hours and rates are reasonable.") (Ex. 22); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *15-16 (S.D. Ohio Dec. 21, 2012) (concluding that $500 was a reasonable rate for two senior attorneys and rates between $100 and $450 were reasonable for other attorneys and involved staff) (Ex. 23); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) (approving attorney rates ranging from $325 to $650 and paralegal rates from $90 to $215 in complex class action); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386, 386 n.6 (D. Md. 2006) (awarding rates of up to $595 per hour). Counsel's hourly rates have also been approved by Courts in this

---

settlements" and collecting cases) (Ex. 18); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (finding no abuse of discretion where district court approved attorney's fees with a "fairly common" lodestar multiplier of 4.07 despite objection that lodestar multiplier could not be above 3).

District. (Ex. 2, ¶ 35). Thus, the lodestar cross-check supports the requested fee award.

### e.   *The Complexity of the Litigation*

Wage-and-hour collective actions are complicated and time-consuming. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). This case is no exception, as it required counsel to develop a theory for judicial notice under the new *Clark* standard and involved resolution of potentially complex factual and legal disputes regarding liability, damages, and collective treatment, all of which Plaintiffs' counsel had to analyze and consider in both litigating the case to this point and in determining whether it was in the opt-ins' best interest to resolve the matter.

### f.   *Counsel's Skill*

As set forth in the Declaration of David Blanchard, Plaintiffs' counsel is qualified, experienced, and have substantial credentials in class and collective action litigation. Similarly, Defendants' counsel also has significant experience litigating FLSA actions. Therefore, this factor supports approval of the requested fee award.

### 2.   *The Court Should Approve Payment for Plaintiffs' Litigation Costs*

In addition to attorneys' fees, Plaintiffs' counsel seeks out-of-pocket litigation costs capped at $7,500.00 and which are currently estimated at $7,585.21. (Ex. 2, ¶¶ 43-44). Plaintiffs' counsel advanced the requested costs with the risk of no recovery. (Ex. 2, ¶ 43). Such costs were necessary for the litigation, including filing and court fees, mediation fees, and notice administration. (Ex. 2, ¶¶ 43-44). Defendants do not oppose this request, and such requests are routinely granted. *See, e.g.*, *Fields v. KTH Parts Indus., Inc.*, No. 3:19-CV-8, 2022 U.S. Dist. LEXIS 143881, at *19 (S.D. Ohio Aug. 9, 2022) ("Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.") (Ex. 23).

### C.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS

The Settlement provides for a service award to Named Plaintiffs Christie McBride, Anita Ledesma, Jasmine Douglas and Emily Hoover in the amount of $5,000.00 each. The Sixth Circuit has recognized that service awards are a way of "encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 885, 897 (6th Cir. 2003). Moreover, courts approving such service awards do so to recognize the burdens that named plaintiffs incur during class litigation. *See In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). Courts have noted the importance of service awards in wage and hour cases like the present one, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187-88.

The Named Plaintiffs brought this action on behalf of other employees of Defendants who allege that they were not paid for all their hours worked and were willing to put their name and reputation on the line to assert the rights of his co-workers. They ably assisted counsel by providing material information about the merits and scope of the case. (Ex. 2, ¶ 21). Without the Named Plaintiffs' willingness and involvement in this case, this settlement would have been impossible, and over 80 service industry workers across the state would not be benefiting from their efforts. *Id.*

The requested amount is similar to or less than those approved in the Sixth Circuit and in wage and hour actions in other jurisdictions. *See, e.g.*, *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *19-20 (May 25, 2013) (approving a $12,500.00

service award out of a $452,380.00 gross settlement amount) (Ex. 24); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, at *28 (E.D. Tenn. Mar. 8, 2018) (Ex. 25) (approving a $10,000.00 service award); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *20 (S.D. Ohio July 11, 2014) (approving a $10,000.00 service award to each class representative) (Ex. 11); *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, at *6 (S.D.N.Y. Mar. 24, 2016) (Ex. 26) (approving a $30,000.00 service award that represented approximately 5% of the settlement fund, finding that was "well within the range of service awards recently approved" in the district). The requested service award here is reasonable and should be approved.

## IV.    CONCLUSION

This settlement is the hard-fought product of extensive arm's-length negotiations between experienced counsel and fairly and reasonably resolves a *bona fide* dispute. The Agreement and requested attorneys' fees, litigation costs, service award, and third-party administrator costs satisfy the criteria for a fair and reasonable settlement as set forth by the Sixth Circuit. Plaintiffs respectfully request that this Court enter the Proposed Order approving and effectuating the terms of the Agreement.

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ David M. Blanchard
David M. Blanchard (P67190)
Kelly R. McClintock (P83198)
Attorneys for Plaintiffs and Class
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
mcclintock@bwlawonline.com

Dated: April 14, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2024, my paralegal, Natalie M. Walter, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

<u>/s/ David M. Blanchard</u>
David M. Blanchard (P67190)
BLANCHARD & WALKER PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com